UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAMON WASHINGTON,

    Defendant.
                              /

CASE NO. 17-20683
HON. DENISE PAGE HOOD

## ORDER DENYING DEFENDANT'S
## MOTION FOR COMPASSIONATE RELEASE FROM CUSTODY
## PURSUANT TO 18 U.S.C. § 3582 [ECF No. 179] and
## DENYING DEFENDANT'S MOTION FOR DISCOVERY [ECF No. 183]

This matter is before the Court on Defendant Damon Washington's Motion for Modification of Term of Imprisonment (Motion for Compassionate Release), ECF No. 179, and Motion for Discovery. ECF No. 183.  The Government has filed a response to the Motion for Compassionate Release. ECF No. 187.

**I.    BACKGROUND**

In September 2017, Defendant and his co-defendants, Kenneth Gardner ("Gardner") and Veronica Sharp ("Sharp"), conspired to rob and carjack customers of Detroit casinos. The "car-bumping" plan they developed entailed: (1) Defendant and Sharp locating a potential target in the casino; (2) notifying Gardner as the patron left the casino while Gardner waited outside in a stolen car; and (3) Gardner then

1

following the intended victim and "bumping" the victim's car to look like a minor car accident. Once both Gardner and the victim pulled over to "assess the damage" from the "accident," Gardner would rob the victim at gunpoint, taking the victim's car, phone, wallet, identifying information, and casino earnings. Defendant and Sharp would then meet up with Gardner to split the profits.

On October 2, 2017, officers observed Defendant and Gardner follow victim A.W. as she exited the casino. After following her vehicle down the road, Gardner bumped her vehicle and both parties pulled over. As Gardner approached the victim's vehicle, officers immediately approached both vehicles and put an end to the attempted carjacking. Gardner threw a handgun under the victim's car. The handgun was later recovered by police and identified as the one Defendant gave to Gardner. Police apprehended Defendant in his Dodge Charger a few exits away from the crime scene.

Based on Defendant's plea agreement, admissions at his plea hearing, and testimony at Gardner's trial, Defendant's role in the scheme included: (1) giving Gardner a handgun with green laser precision to carry out the car jackings; (2) driving Gardner to locate the stolen vehicles used in the car bumping plan; (3) helping Sharp in select victims at the casino; and (4) encouraging Gardner to continue with the car jackings until they were apprehended by law enforcement during the attempted carjacking of A.W.

On April 12, 2018, pursuant to a Rule 11 plea agreement, Defendant pleaded guilty to charges for: (a) Conspiracy to Commit Carjacking (Count 1); (b) Carjacking (Counts 7-8); (c) Use, Carry, and Brandish of a Firearm During and In Relation to Crime of Violence (Counts 16-17); and (d) Possession of Device-Making Equipment, Aggravated Identity Theft, and Possession of 15 or More Counterfeit or Unauthorized Access Devices (Counts 20-22). ECF No. 46. Although the parties agreed at the time of Defendant's plea that the guideline range for his offenses was 504-534 months in prison and the ultimate appropriate guideline range for his offenses was 255 to 270 months, the Court imposed a sentence of 156 months (13 years) in prison. ECF No. 156. At the time Defendant filed his Motion for Compassionate Release, he had served a little more than five years of his prison term, having begun serving his term on or about October 2, 2017, and had nearly seven years remaining, with an approximate release date of January 6, 2029.

## II.    ANALYSIS

### A.    The First Step Act

In resolving motions for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), district courts now face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction. *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000,

1006-07 (6th Cir. 2020). A third consideration, the § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions. U.S.S.G. § 1B1.13; *United States v. Elias*, 984 F.3d 516, 518–20 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1108); *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021).

A defendant must first exhaust all administrative remedies, or, alternatively, wait 30 days after the warden's first receipt of the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Defendant, however, has not claimed that he exhausted his administrative remedies and the Government claims that Defendant has not made a request for compassionate release to the warden. On that basis alone, Defendant's Motion for Compassionate Release must be denied pursuant to *Alam. See also United States v. Raia*, 95 F.3d 594, 595-97 (3d Cir. 2020). As discussed below, the Court also concludes that Defendant's Motion for Compassionate Release must be denied on the merits.

    **B.    First Step – Extraordinary and Compelling Circumstances**

        **1.    Reasons Raised**

As to whether there is extraordinary and compelling circumstances to merit a sentence reduction in this case, Defendant cites his underlying health conditions (obesity and hypertension) and his claim of the dangerous risk they pose in light of

4

the imminent-and now-realized threat of a deadly disease (Covid-19), which was unforeseen when he entered prison.

### 2. Medical Condition

The Government acknowledges Defendant's risk factors of obesity and primary hypertension. ECF No. 187, PageID.2835. The Government argues that the BOP has mitigated and continues to mitigate the COVID-19 pandemic, by various strict protocols, distribution of vaccines to staff and inmates, and implementation of the Attorney General's directive on assessing home-confinement options for some inmates based on age, vulnerability to COVID-19, the risks that the inmate may contract COVID-19 at home, and the risk to public safety.

The Sixth Circuit has recognized that the COVID-19 vaccine is now available to a defendant housed with the BOP and concluded that if the defendant has access to the vaccine, the COVID-19 pandemic alone does not present an "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Lemons,* 15 F. 4th 747, 751 (6th Cir. 2021). The Sixth Circuit further stated:

> After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge

> Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order."

*Id.* (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)).

The Court holds that between the availability of the COVID-19 vaccine and the BOP's efforts to manage the pandemic, a sentence modification is not warranted based on Defendant's underlying medical conditions. He is receiving sufficient medical care for these conditions while in custody and the Covid-19 vaccine is available to Defendant. The fact that Defendant has elected to not avail himself of the Covid-19 vaccine does not aid Defendant's argument. Courts have routinely held that extraordinary and compelling circumstances are lacking and a compassionate release is not warranted based on the threat of Covid-19 alone when a vaccine is available. *See, e.g., United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021); *United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021); *United States v. Jackson*, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021); *United States v. Swarn*, 2021 WL 4077344, at *2 (E.D. Mich. Sept. 8, 2021).

Defendant's unexplained and, so far as the Court can ascertain, unwarranted refusal to be vaccinated precludes his compassionate release. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (when a defendant "has access to the

COVID-19 vaccine," the COVID-19 pandemic and potential exposure to the virus "does not present an extraordinary and compelling reason warranting a sentence reduction."); *United States v. Traylor*, 16 F.4th 485, 486 (6th Cir. 2021) (affirming a denial of compassionate release based on the defendant's underlying medical conditions where the defendant had access to the COVID-19 vaccine, thus "significantly reducing her risk of contracting and becoming severely ill from COVID-19"); *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)").

### C. Second Step – 18 U.S.C. § 3553(a)(1) Factors

The second step requires that the sentencing court consider the sentencing factors set forth in 18 U.S.C. § 3553(a)(1):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i)    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; ...

\* \* \*

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553 (West).

    The Sixth Circuit repeatedly has held that district courts may deny relief under § 3553(a) factors even if extraordinary and compelling reasons would otherwise justify relief. *Ruffin,* 978 F.3d at 1008. The entire record is considered, including the district court's balancing of the factors at the original sentencing. *Id.* At sentencing, the Court thoroughly reviewed the above factors in light of Defendant's criminal conduct prior to imposing the sentence. The Court found and continues to find that the sentence imposed reflected the seriousness of the offense, promoted respect for the law, and provided just punishment for the offense. The Court continues to adopt those findings in this Order.

As this Court noted at sentencing, there is a need to protect the public from further crimes of a defendant (specifically, this Defendant), the need to punish a defendant, and the sentence must reflect the seriousness of the crime. The amount of time served may also be considered in determining whether a sentence modification is appropriate. *Ruffin,* 978 F.3d at 1009. The 156-month sentence imposed on Defendant reflected the goals of sentencing under § 3553(a). As noted above, (a) the Court's sentence reflected a significant departure from the parties' agreed upon guideline range of 504-534 months in prison and the applicable guideline range of 255 to 270 months, and (b) Defendant still has more than half of his sentence remaining to be served. The Court's imposition of the 156-month sentence took into account the goals of sentencing under § 3553(a), including the need to protect the public, punishment and seriousness of the crime. Defendant's criminal conduct that formed the basis for his convictions was extensive, planned, serious, and dangerous. It constituted a significant threat of violence and harm to the community.[1]

---

[1] As noted by the Government (*see* ECF No. 187, PageID.2848):

> Washington authored a plan that enabled him and his codefendants to repeatedly terrorize and disregard the life and property of innocent victims by carjacking them at gunpoint. Washington fails to demonstrate how release, three years into a ten-year sentence for being an armed carjacker, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). And Washington's behavior in prison also suggests he is not ready to be released.

The Court also notes that, although Defendant has completed certain programs during his incarceration, he has not been free of disciplinary action while incarcerated. The Government has submitted a chronological list of all the disciplinary actions against Defendant while in custody, including discipline for failure to obey, disruptive conduct, and possession of a dangerous weapon. And, the Sixth Circuit has noted that rehabilitation alone shall not be considered an extraordinary and compelling reason. *Id.*; 28 U.S.C. § 994(t). Based on this Court's consideration of the factors under § 3553(a), the Court finds a reduction of the already far below guidelines sentence is not warranted.

### III. MOTION FOR DISCOVERY

In a document dated March 29, 2022, which was received by the Court on April 7, 2022, Defendant filed a Motion for Discovery. ECF No. 183. He asked for "a complete and full copy of his discovery including but not limited to police reports, camera footage and any transcripts attorney Epstein is in possession of. I also request the discovery on disc[.]" *Id.* at PageID.2786. It is unclear whether the Motion for Discovery is related to the Motion for Compassionate Release or a prior motion. The Motion for Discovery was filed shortly after the Motion for Compassionate Release was filed, and it was prepared while his 28 U.S.C. § 2255

---

(Exh. 2, Disciplinary Records). The public still needs to be protected from Washington, and his efforts at rehabilitation are unfinished. (*Id.*)

10

Motion to Vacate Sentence was pending. The Motion for Discovery was not received by the Court, however, until after the Court's Order denying the 2255 Motion. *See* ECF No. 181, filed April 5, 2022.

The Court finds no basis or authority for providing Defendant with the items he requested in the Motion for Discovery. The 2255 Motion was decided before the Motion for Discovery was received, rendering it moot with respect to the 2255 Motion. The Court finds that Defendant has failed to explain why such items – which do not appear to be material -- are necessary -- to decide issues raised in the 2255 Motion or the Motion for Discovery. Accordingly, the Motion for Discovery is denied.

### IV. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582 [ECF No. 179] is DENIED.

IT IS FURTHER ORDERED that Defendant' Motion for Discovery [ECF No. 183] is DENIED.

IT IS ORDERED.

Dated: July 11, 2022

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE